No. 24-10186

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

**ALEX PEYKOFF;**
**SATISFIED LIFE FOUNDATION, INCORPORATED,**

*Plaintiffs - Appellants,*

**v.**

**CHARRISSA CAWLEY;**
**CBCG, L.L.C., DOING BUSINESS AS GAME CHANGER PUBLISHING,**

*Defendants - Appellees.*

---

On appeal from
the United States District Court for the
Northern District of Texas, Fort Worth
Cause No. 4:23-cv-404

---

**APPELLEES' BRIEF**

---

/s/ Warren V. Norred
Warren Norred, TX Bar 24045094
wnorred@norredlaw.com
**NORRED LAW, PLLC**
515 E. Border; Arlington, Texas 76010
O: 817.704.3984; F: 817.524.6686
Attorneys for Appellees

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

**Appellants**: Alex Peykoff and Satisfied Life Foundation, Inc.
**Appellants' counsel:** Brandon Crisp, Jennifer Foster, aLisa Sinor, Terrazas PLLC

**Appellees:** Charissa Cawley and CBCG, LLC, d.b.a. Game Changer Publishing
**Appellees' counsel:** Warren V. Norred, Norred Law PLLC.

s/Warren Norred
Attorney of record for Appellees

# STATEMENT REGARDING ORAL ARGUMENT

Appellants have requested oral arguments and Appellees would welcome an opportunity to appear before this Court and in support of the district court's decision and to answer any questions the justices may have.

# TABLE OF CONTENTS

**INDEX OF AUTHORITIES** ........................................................................4

**JURISDICTIONAL STATEMENT**..............................................................6

**ISSUES PRESENTED**..................................................................................6

**STATEMENT OF THE CASE**......................................................................6

**SUMMARY OF THE ARGUMENT** ............................................................7

**ARGUMENT** ................................................................................................8

   A.  Standard of Review.................................................................................8

   B.  Summary Judgment Standard .................................................................8

   C.  Dismissal of Appellants' Claims were proper. ......................................9

     i.   Dismissal of Appellants' Breach of Partnership Agreement Claim .............9

     ii.   Dismissal of Appellants' Breach of Fiduciary Duty Claim .......................16

     iii.    Dismissal of Appellants' Tortious Interference Claim............................20

     iv.  Dismissal of Appellants' Business Disparagement Claim ........................23

     v.   Dismissal of Appellants' Negligent Misrepresentation Claim..................25

**PRAYER** ......................................................................................................27

# INDEX OF AUTHORITIES

## CASES

*Allen v. Hayes*, 65 F.4th 736, 743 (5th Cir. 2023) ......................................................8

*Am. Med. Int'l, Inc. v. Giurintano*, 821 S.W.2d 331, 339
    (Tex. App.—Houston [14th Dist.] 1991, no writ) ................................ 17, 19

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ....................................... 8, 9, 13, 24, 26

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)................. 8, 9, 13, 14, 24, 26

*Cf. Gcorp Int'l, Inc. v. Amdocs, Inc.*, No. 3:23-CV-0397-B,
    2023 U.S. Dist. LEXIS 85200, at *16 (N.D. Tex. May 16, 2023) ...............22

*Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)). .............................15

*Coinmach Corp. v. Aspenwood Apt. Corp.*, 417 S.W.3d 909, 923 (Tex. 2013)......20

*COPSync, Inc. v. Page*, No. A-09-CA-871-SS,
    2010 U.S. Dist. LEXIS 154279 (W.D. Tex. Apr. 2, 2010). ..........................25

*Edomwande v. Allstate Ins. Co.*, No. 3:10-CV-1806-M (BH),
    2011 U.S. Dist. LEXIS 15492, at *4 (N.D. Tex. Jan. 20, 2011). .................15

*Gen. Elec. Cap. Corp. v. Posey*, 415 F.3d 391, 397 (5th Cir. 2005) ......................26

*Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992) ...............................9

*Hodge v. Engleman*, 90 F.4th 840, 843 (5th Cir. 2024) ...........................................8

*In re Am. Airlines, Inc., Privacy Litig.*,
    370 F. Supp. 2d 552, 567-68 (N.D. Tex. 2005)............................................25

*In re Lipsky*, 460 S.W.3d 579, 592 (Tex. 2015) ....................................................23

*Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998)............................18

*J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004) ..................14

*Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.—Dallas 2006, pet. denied) ......16

*Kan v. OneWest Bank, FSB*, 823 F. Supp. 2d 464, 468 (W.D. Tex. 2011)............14

*Kitziger v. Gulfstream Servs., Inc.*, No. 20-386,
    2021 WL 638118, at *8 (E.D. La. Feb. 17, 2021) ........................................14

*McCamish v. F.E. Apling Interests*, 991 S.W.2d 787, 788 (Tex. 1999).................26

*Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2007)...........16

*Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*,
    29 S.W.3d 74, 77 (Tex. 2000).......................................................................22

*Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).......9

*Reed v. Marshall*, No. H-21-3942,
    2022 U.S. Dist. LEXIS 46413 (S.D. Tex. Mar. 16, 2022). .........................23

*Smith v. Ins. Adjusters Grp., LLC*, No. 2:21-cv-00068-JRG-RSP,
    2021 U.S. Dist. LEXIS 148953, at *15 (E.D. Tex. July 12, 2021) ..............11

*Sonnier v. State Farm Mut. Auto. Ins. Co*, 509 F.3d 673, 675 (5th Cir. 2007). ........9

*Stephanz v. Laird*, 846 S.W.2d 895, 901
    (Tex. App.—Houston [1st Dist.] 1993, writ denied)............................ 17, 19

*Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994) .....14

*Vigo v. Reed*, No. 3:11-CV-2044-G,
       2012 U.S. Dist. LEXIS 157031 (N.D. Tex. Nov. 1, 2012)............................24

## STATUTES

28 U.S.C. § 1291 ...............................................................................................6

28 U.S.C. § 1332 ...............................................................................................6

Tex. Bus. Org. Code 152.052(a) ...................................................................10

## OTHER AUTHORITIES

Restatement (Second) of Torts § 552(1)......................................................26

## RULES

Fed. R. Civ. Pro. 12(b)(6) ................................................... 6, 8, 9, 14, 27

Fed. R. Civ. Pro. 8(a)(2) ...............................................................................8

## JURISDICTIONAL STATEMENT

The Northern District of Texas had jurisdiction over the suit giving rise to this appeal due to diversity under 28 U.S.C. § 1332. This Court has jurisdiction to consider this appeal under 28 U.S.C. § 1291.

## ISSUES PRESENTED

Under the Federal Rules of Civil Procedure, did the district court err in in dismissing Appellants' claims with prejudice pursuant to Rule 12(b)(6)?

## STATEMENT OF THE CASE

The parties in this dispute entered into an informal arrangement wherein Appellee Cawley would use her experience and connections to plan and host networking events and Appellant Peykoff would increase both the attendance at and value of these events by leveraging his connections with high-net-worth individuals to entice those individuals to attend. Cawley would be paid after the event from proceeds. The arrangement was not documented and the parties labored under different understandings regarding their contractual arrangement.

Appellants, upon the failure of the first event, sued Appellees alleging that they failed to perform under their agreement, primarily by refusing to pay for half of the losses incurred during the first event. These claims were properly dismissed by the district court at the Rule 12(b)(6) stage, primarily due to the lack of evidence that any partnership agreement was entered into by the parties.

# SUMMARY OF THE ARGUMENT

Appellants are Alex Peykoff and the Satisfied Life Foundation ("SLF"), a foundation which Peykoff operates. ROA 24-10186.247. Peykoff contracted with Game Changer Publishing ("GCP") for assistance in publishing and promoting a book. Peykoff then engaged GCP's CEO, Charrissa Cawley, to assist him with an entrepreneurial event in Punta Mita, Mexico, called a "mastermind" for aspiring entrepreneurs. ROA 24-10186.74, 247-248.

According to Appellants, they and Appellees formed a partnership in which Cawley provided event logistics and Appellants provided funding, client contacts, and contributed business reputation to make the event successful. ROA 24-10186.248. Appellees asserted that Cawley was a consultant to be paid following the event. Sadly, the event lost $216,000, and Appellants sued, seeking contribution from Appellees for half of the losses. ROA 24-10186.248.

Following the event's failure, Appellants allege that Cawley sent reputation-damaging false communications regarding SLF and at the same time announced that GCP would be available to provide services for future events under a new brand. ROA 24-10186.248.

Appellants filed the present suit based on the alleged partnership agreement and breach of that agreement, along with other related claims. The Court granted Appellees' motion to dismiss on May 23, 2024. ROA 24-10186.5.

## ARGUMENT

### A. Standard of Review

The parties agree that this Court reviews a district court's order granting a Rule 12(b)(6) motion de novo. *Hodge v. Engleman*, 90 F.4th 840, 843 (5th Cir. 2024) (citing *Allen v. Hayes*, 65 F.4th 736, 743 (5th Cir. 2023)). See Appellants Brief at 8.

### B. Summary Judgment Standard

The Federal Rules of Civil Procedure require complaints contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). If a plaintiff fails to satisfy this standard, the defendant may file a motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is facially plausible when the plaintiff pleads factual content that allows a court to reasonably infer that the defendant is liable for the alleged misconduct. *Iqbal*, 556 U.S. at 678.

Unlike a "probability requirement," the plausibility standard instead demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Where a complaint contains facts that are "merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting Twombly, 550 U.S. at 557) (internal quotation marks omitted).

When reviewing a Rule 12(b)(6) motion, the district court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. Sonnier *v. State Farm Mut. Auto. Ins. Co*, 509 F.3d 673, 675 (5th Cir. 2007). However, a district court is not bound to accept legal conclusions as true. *Iqbal*, 556 U.S. at 678–79. To avoid dismissal, pleadings must show specific, well-pleaded facts rather than conclusory allegations. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).

A court ruling on a motion to dismiss "may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (cleaned).

**C. Dismissal of Appellants' Claims were proper.**

i. *Dismissal of Appellants' Breach of Partnership Agreement Claim*

The parties agree that Texas law requires consideration of five factors to determine whether a partnership was formed, which include (1) the right to receive

a share of profits; (2) an expressed intent to be business partners; (3) participation, or the right to participate in control of the business; (4) agreement to share, or actual sharing of, losses, including liability to third parties; and (5) agreement to contribute, or actual contribution of, money or property to a business. Tex. Bus. Org. Code § 152.052(a). ROA 24-10186.251.

Appellants allege that they satisfied the factors by pleading that the parties:

a) agreed to form a partnership to host an event in an exotic location;

b) described the agreement's purpose as hosting the Satisfied Life event and share profits from the event (with expected profits of at least $200,000);

c) jointly participate in control of the event;

d) routinely expressed to others that they were business partners;

e) agreed that Peykoff and SLF would front the costs of the SLF event and provide client contacts and their valuable business reputation to support the event, and Cawley and Game Changer brought 22 years of experience to bear, advising that this history of profitably planning and hosting such events would ensure the event's success.

The district court properly applied the factors and demonstrated that a partnership was not formed based on the facts Appellants plead.

As the district court noted, "[n]early all of Plaintiffs' allegations are either conclusory in nature or threadbare recitals of the five partnership factors." ROA 24-10186.252. The trial court stated:

> Plaintiffs merely allege that "any profits, as well as any losses, would be split between the partners," but do not include any specific facts regarding how the profits or the losses would be split, such as details about the particular division of profits and losses as well as how Peykoff's initial advancement of funds would be reimbursed in the event of a revenue shortfall. Simply stating that profits and losses would be shared is nothing more than reciting the first and fourth partnership factors.

ROA 24-10186.252.

Indeed, ¶ 15 of the Complaint merely asserts that Peykoff agreed to fund and participate in the partnership with the understanding that any profits, as well as any losses, would be split between the partners, but as the district court noted, simply stating that profits and losses would be shared in nothing more than recitation of the first and fourth factors.  ROA 24-10186.75, ROA 24-10186.252.

Appellants rely on *Smith v. Ins. Adjusters Grp., LLC*, for the proposition that purported failure to plead how proceeds were to be split, the sharing of losses, the sharing of liability, and contributions to the business, are not required to plead a claim. *Smith v. Ins. Adjusters Grp., LLC*, No. 2:21-cv-00068-JRG-RSP, 2021 U.S. Dist. LEXIS 148953, at *15 (E.D. Tex. July 12, 2021). Appellant's Brief at 11.

First, *Smith* is not controlling precedent in either the Northern District Court or this Court. Second, Appellants plead that the parties' activities described at ¶ 15

of the Complaint "indicate that there was a mutual intention" between the parties in holding a "Satisfied Life" event. ROA 24-10186.252. Yet the events described give no details of these activities which indicate this mutual intention.

Plaintiff alleges the parties "agreed to partner together to host a multiday entrepreneurial event" in Mexico, but fails to allege facts regarding any details beyond a conclusory allegation that the agreement existed.

Appellants claim that Peykoff performed under the alleged agreement, "by advancing funds to cover costs associated with the Satisfied Life event." ROA 24-10186.252. However, Appellants offered no proof whatsoever, not even a scintilla of evidence, substantiating this allegation and as noted supra mere conclusory language is not enough to sustain a pleading in federal court.

Contrary to the factors listed above, Cawley agreed to accept a payment for her consultation services of $30,000 from the Satisfied Life Foundation after the event. However, an agreement to delay payment for consultation services is not an agreement to receive a share of profits – if the event had been profitable, Appellee's payment would not have increased. Nor did Cawley have any control over the event beyond offering the advice of a consultant. Appellants have not even alleged that Appellees agreed to contribute funds.

Appellants operate on the confused assumption that district courts must examine pleadings, take every plead statement as true, and make any inferences

necessary to support the truth of all statements. However, that is not the nature of the pleading requirement. In *Ashcroft v. Iqbal*, the Supreme Court clarified the process of adjudication regarding motions to dismiss, instructing district courts to first identify pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth, and then assume the remaining well-pleaded factual allegations are true, determine whether they plausibly give rise to a claim of relief. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). This is precisely the process employed by the district court that Appellants now object to. Appellants would have district courts skip identification of conclusory allegations and simply stipulate to the truth of claims independent of well plead facts.

For a trial court to find 'facial plausibility', a plaintiff must plead facts that allow the court to draw a reasonable inference that the accused defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556-57). The Supreme Court instructed in *Iqbal* that pleadings which are "no more than conclusions, are not entitled to the assumption of truth" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." 129 S. Ct. at 1949-50. Although all reasonable inferences will be resolved in favor of the plaintiff, the Fifth Circuit has instructed that the plaintiff must plead "specific facts, not mere

conclusory allegations." *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994). Further, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 129 S. Ct. 1937, 1949-50 (2009).

Appellant's analysis fails to satisfy the pleading requirements to survive a Rule 12(b)(6) motion to dismiss. Specifically (1) every element of each cause of action must be supported by specific factual allegations; and (2) the complaint must state a plausible claim for relief. *Kan v. OneWest Bank*, FSB, 823 F. Supp. 2d 464, 468 (W.D. Tex. 2011).

Appellants attempt to paper over their failure to provide specific factual allegations for each element of their claims by stating that a conclusory assertion of the elements of each claim is sufficient to plead their case. Indeed, Appellants seem to expand the principle that a district court's lack of authority to make credibility determinations in ruling on motions to dismiss (as outlined in *Kitziger v. Gulfstream Servs., Inc.*) inexorably leads to the conclusion that a court may or must draw factual inferences favorable to plaintiffs. No. 20-386, 2021 WL 638118, at *8 (E.D. La. Feb. 17, 2021). However, it is hornbook law that a reviewing court "must accept as true all material factual allegations in the complaint, but [is] not to draw inferences from the complaint favorable to plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004).

As the Supreme Court succinctly articulated the pleading standard in *Bell Atl. Corp. v. Twombly*, to survive a motion to dismiss under Rule 12(b)(6) a complaint must allege a plausible set of facts sufficient "to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). The Court also held that the standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. As the district court found, Appellants recited elements rather than plead facts sufficient to overcome the speculative level.

Further evidence of Appellants' confusion comes from their reliance on *Edomwande v. Allstate Ins. Co.*, holding that courts must resolve all reasonable inference in favor of plaintiff, and "cannot look beyond the pleadings." No. 3:10-CV-1806-M (BH), 2011 U.S. Dist. LEXIS 15492, at *4 (N.D. Tex. Jan. 20, 2011). Obviously, the resolution of reasonable inferences comes *after* removal of conclusory allegations.

Similarly, Appellants' citation to *Clark v. Amoco Prod. Co.*, that "even if it seems almost a certainty to the court that the facts alleged cannot be proved to support the legal claim, the claim may not be dismissed so long as the complaint states a claim…" is misplaced because the district court did not inquire into whether the alleged facts could support the claim, but rather whether sufficient facts were

alleged at all to trigger the requisite elements. *Clark v. Amoco Prod. Co.,* 794 F.2d

967, 970 (5th Cir. 1986)).

As the district court noted with regard to factors three and five,

"While Plaintiffs allege that Peykoff fronted the costs of Mastermind, they only contend that Defendants were required to later reimburse these costs if Mastermind produced "a shortfall in revenue" and leverage client contacts to drive attendance at the event. Plaintiffs supply no further details about how the parties would each contribute funds or property to the partnership. Relatedly, Plaintiffs do not allege how the parties participated (or contained the right to participate) in the control of the partnership. From the First Amended Complaint, it appears that Defendants lacked any control whatsoever. This is the most fatal flaw in Plaintiffs' breach of partnership claim. Plaintiffs identify no specific responsibilities, roles, or obligations carried out by Defendants beyond helping generate attendance at Mastermind. Without more, the Court cannot determine that Defendants were anything more than hired consultants."

ROA 24-10186.253.

Indeed, Plaintiff takes great pains to avoid any acknowledgement of the

District Court's analysis that "[s]uch facts are particularly important in light of

Plaintiffs' admission that Defendants initially provided services—publication and

promotion of Peykoff's book—that are consistent with hiring Defendants for to serve

as consultants rather than partners. Something more is needed at this stage to show

that the parties' relationship transformed into a partnership." ROA 24-10186.253.

### ii. *Dismissal of Appellants' Breach of Fiduciary Duty Claim*

Appellants next assert that the district court erred in dismissing Appellants'

breach of fiduciary duty claim. Appellants brief at 13. The elements of a breach of

fiduciary duty claims under Texas law are: "(1) a fiduciary relationship between the plaintiff and defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant." *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2007) (citing *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.—Dallas 2006, pet. denied)). "A fiduciary relationship exists when the parties are under a duty to act for or give advice for the benefit of another upon matters within the scope of the relationship." *Stephanz v. Laird*, 846 S.W.2d 895, 901 (Tex. App.—Houston [1st Dist.] 1993, writ denied). "[A] fiduciary relationship is an extraordinary one and will not be lightly created." *Am. Med. Int'l, Inc. v. Giurintano*, 821 S.W.2d 331, 339 (Tex. App.—Houston [14th Dist.] 1991, no writ). "[T]he mere fact that one subjectively trusts another does not, alone, indicate that he placed confidence in another in the sense demanded by fiduciary relationships because something apart from the transaction between the parties is required." *Id*. (citation omitted).

In the facts at bar, Appellant Peykoff originally failed to plead a claim for breach of fiduciary duty based on his imaginary partnership with Appellees, even ignoring the fact that the event was intended to benefit the Satisfied Life Foundation, and not Peykoff. Even after correction and amendment, Appellants' allegations regarding competition from the alleged partnership is nothing more than rote element language; Appellants give no details and allege no facts to show the Court

what constitutes the "false correspondence and taking other actions to drive Satisfied-Life clients and potential clients to Defendants' alternatives services set up in the wake of the Satisfied Life event." ¶ 15 of the Complaint, ROA 24-10186.77. Appellants must plead four facts to support this claim:

a) a partnership existed;

b) Appellees breached their fiduciary duties by not reimbursing Peykoff for payments or advances he made on behalf of the alleged partnership after the alleged partnership experienced a loss;

c) Appellees sent false correspondence to Peykoff and SLF's clients and potential clients and changed social media messaging to take business from Appellants.

d) Damages from breach of the alleged fiduciary duty.

Appellants Brief 13-14.

These alleged facts are not sufficient to show that Appellees owed a fiduciary duty to Appellants. As the District Court correctly held,

> The Court already concluded that the facts in the First Amended Complaint do not sufficiently show that a partnership was formed. As a result, there can be no fiduciary duties on account of the parties' relationship as alleged partners. Although fiduciary duties are not limited just to partnerships, the First Amended Complaint only alleges the parties owed a fiduciary duty to each other as business partners.

ROA 24-10186.255.

A breach of fiduciary duty claim is predicated on the existence of a partnership, but Appellants failed to properly plead the existence of a partnership. Texas law is clear; fiduciary duties arise in attorney client, partnership, and trustee relationships. *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998). Further, findings of fiduciary relationships are "extraordinary" and "not be lightly created," *Am. Med. Int'l, Inc. v. Giurintano*, 821 S.W.2d 331, 339 (Tex. App.—Houston [14th Dist.] 1991, no writ.). The trial court found insufficient allegations in Appellants' pleading to conclude a fiduciary relationship was alleged. ROA 24-10186.25.

Indeed, Appellants never address the district court's contention that,

> …even setting that formal relationship aside, Plaintiffs still have not supplied facts to show "that the dealings between the parties continued for such a time that one party is justified in relying on the other to act in his best interest." *Stephanz v. Laird*, 846 S.W.2d 895, 902 (Tex. App.—Houston [1st Dist.] 1993, writ denied). There must be "some independent basis" beyond the "arms-length business transaction" to establish an informal fiduciary relationship. *Id.* The parties' relationship centered around a single event related to the business transaction for Defendants to publish and promote Peykoff's book. There is no suggestion in the First Amended Complaint that the parties had a long-term relationship giving rise to informal fiduciary obligations. The mere fact that Plaintiffs subjectively trusted Defendants by relying on representations about expertise and past success are not enough to indicate that a fiduciary relationship existed for a single event.26 That is because "something apart from the transaction between the parties is required" to sustain a breach of fiduciary duty claim based on an informal partnership. *Am. Med. Int'l, Inc.*, 821 S.W.2d at 339. Given the "narrow application of fiduciary duties arising from informal relationships, it would not be appropriate to extend any fiduciary duty" here. *Stephanz*, 846 S.W.2d at 902.

ROA 9-10.

In sum, Appellants provided none of the details that the district court should have been able to see with ease, and because of the insufficient factual pleading, no fiduciary duty claim is sustainable.

### iii. Dismissal of Appellants' Tortious Interference Claim

Appellants allege that they properly plead a tortious interference with a business relationship claim. Appellants Brief at 14. The parties agree that to state a claim for tortious interference with a business relationship under Texas law, a plaintiff must plausibly plead facts satisfying the following elements:

(1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result.

*Coinmach Corp. v. Aspenwood Apt. Corp.*, 417 S.W.3d 909, 923 (Tex. 2013) (citation omitted).

Appellants allege that they properly pleaded the claim with the following:

a) After the Satisfied Life event failed, Appellees sent misinformation about Peykoff's business plans to his existing and prospective clients, resulting in a situation where those clients were driven to Appellees' own business venture, "The One Mastermind," to the exclusion of Peykoff;

b) Appellees' conduct created reputational and financial harm to Appellants.

Appellants Brief at 15.

Appellees asserts this claim with a total of five sentences which do not adequately describe what false representations were made by Appellees, or when and how these statements were published, or how Appellees committed an independent tortious act which prevented a relationship to accrue, or what damages occurred.

As the district court correctly noted, "the Court cannot accept as true that there was a reasonable probability Plaintiffs and third-party clients would have entered into a business relationship. Plaintiffs offer only conclusory assertions without supporting facts." ROA 24-10186.257.

Specifically, Appellants did not plead facts demonstrating how:

a) Appellees acted with a conscious desire to obstruct business in the alleged relationships or how Appellees knew that interference was certain, or substantially certain, to occur as a result of their actions;

b) Appellees' representations to SLF clients were false or offer details about the publication of the statements.

c) Appellees engaged in any independently tortious or unlawful conduct.

As the district court noted, "[a]lthough the First Amended Complaint states that Plaintiffs 'had existing contracts and business relationship with clients'—which allegedly suffered due to Defendants' false representations— Plaintiffs identify no independent legal theories of liability. ROA 24-10186.258.

The court further observed,

> "The thin allegations that Defendants intentionally made false statements about Peykoff stepping aside from SLF's Mastermind venture and that Defendants would instead be available to serve any future needs for SLF clients do not, alone, constitute a tort or unlawful act. As explained above, Plaintiffs do not describe what made Defendants' representations false or when and how these statements were published.

ROA 24-10186.258.

As a matter of law, proximate causation cannot be shown in the absence of independently tortious or unlawful conduct, which Appellants' facts fail to exhibit. *Cf. Gcorp Int'l, Inc. v. Amdocs, Inc.*, No. 3:23-CV-0397-B, 2023 U.S. Dist. LEXIS 85200, at *16 (N.D. Tex. May 16, 2023) (finding that "a well-pleaded tortious interference with contract claim satisfies the 'independently tortious or wrongful' element of tortious interference with prospective business relations claim").

Additionally, Plaintiffs did not even deign to plead tortious interference with a contract. And they could not, as a plausible claim for tortious interference with an existing contract, a plaintiff must show "(1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss." *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000) (citation omitted). Appellants failed to plead any contracts with their alleged unnamed third parties. Thus, this avenue cannot serve as the basis for their claim.

Appellants again hang their hats on *Reed v. Marshall*, for the proposition that Rule 12(b)(6) challenges should be rejected where a court would have to assess the merit of the facts underlying the plaintiff's petition to resolve defendant's allegations about the nature of those pleaded facts. No. H-21-3942, 2022 U.S. Dist. LEXIS 46413, at *2-3 (S.D. Tex. Mar. 16, 2022). Appellants' Brief at 15. But in *Reed* the Plaintiff identified business opportunities that third parties withdrew from based on the defendant's interference. *Id.* Indeed, the District Court specifically distinguished *Reed* on those grounds, noting that in Appellants' pleading, there is "no specific identification in their First Amended Complaint of any damage caused by any missed business opportunities stemming from Defendants' communications with third-party clients." ROA 24-10186.259, *See* No. H-21-3942, 2022 U.S. Dist. LEXIS 46413, at *2-3 (S.D. Tex. Mar. 16, 2022).

### iv. *Dismissal of Appellants' Business Disparagement Claim*

Appellants also claim that their business disparagement claim was wrongly dismissed. The parties agree that the Texas tort of business disparagement requires a plaintiff to establish four elements: 1) the defendant published false and disparaging information; 2) with malice; 3) without privilege, and 4) that resulted in special damages. *In re Lipsky*, 460 S.W.3d 579, 592 (Tex. 2015) (cleaned).

In the First Amended Complaint, Appellants fail to detail any false allegation by Appellees or clearly allege statements which resulted in concrete damages. The

First Amended Complaint recites the elements as the district court notes, that Defendants "'published disparaging words . . . to Plaintiffs' clients and potential clients,' the 'words were false,' made 'with malice and without privilege, and "caused . . . special damages.'" ROA 24-10186.260, ROA 24-10186.78, First Amended Complaint ¶ 43-47. Courts cannot accept pleadings comprising vague allegations and mere "threadbare recitals of a cause of action's elements" and "supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 555 U.S. at 555). Thus, the district court rightly dismissed this claim as well.

Additionally, Appellants reliance on *Vigo v. Reed*, for the proposition that a plaintiff's complaint withstood a Rule 12(b)(6) challenge where it alleged inaccurate communication on the part of the defendant, that defendant made the communication knowingly and intentionally, and that the communications worked to plaintiff's detriment No. 3:11-CV-2044-G, 2012 U.S. Dist. LEXIS 157031, at *3-4 (N.D. Tex. Nov. 1, 2012). In the present case, Appellants alleged no facts that Appellee's statements were made knowingly or intentionally, Appellants merely recite the word "malice" without connecting it to any known fact. Similarly, *COPSync, Inc. v. Page* is irrelevant because even if a plaintiff need not articulate the precise amount of damage, he must at the very least articulate the mechanism by which he has been damaged and a plausible basis for the damages, which Appellants have failed to do.

No. A-09-CA-871-SS, 2010 U.S. Dist. LEXIS 154279, at *2 (W.D. Tex. Apr. 2, 2010). In sum, Appellants' business disparagement claim was properly dismissed.

As a collateral argument under this claim, Appellants also argue that even if their pleadings were insufficient, district courts often afford plaintiffs the opportunity to replead. Appellants' Brief at 17. However, even under Appellants' own authority, it is clear that the privilege to replead is discretionary, not obligatory. *See, e.g., In re Am. Airlines, Inc., Privacy Litig.*, 370 F. Supp. 2d 552, 567-68 (N.D. Tex. 2005). Additionally, Appellants fail to acknowledge that they had already repleaded their facts once; the First Amended Complaint was filed in response to Defendant's first Motion to Dismiss. ROA 24-10186.4.

Even with the guidance of Appellees' arguments regarding the inadequacy of their pleading, Appellants' First Amended Complaint still failed to satisfactorily plead basic facts to substantiate its claims in a nonconclusory fashion, strongly militating against giving Appellants another bite at the apple.

### *v.    Dismissal of Appellants' Negligent Misrepresentation Claim*

Appellants argue their Negligent Misrepresentations claim was wrongfully dismissed. Appellants' Brief at 17. Negligent misrepresentation occurs when,

> [o]ne who, in the course of his business, profession or employment, or in any transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*McCamish v. F.E. Apling Interests*, 991 S.W.2d 787, 788 (Tex. 1999) (citing RESTATEMENT (SECOND) OF TORTS § 552(1)).

Among other failings, Appellants did not allege what false information was provided to others without reasonable care or competence, nor did they list a third party who allegedly relied on the false information to Appellants' detriment.

As the district court noted, "the First Amended Complaint lacks any factual assertions as to how Cawley's representations about her expertise and past success were false. Nor does the First Amended Complaint specify how Cawley failed to exercise reasonable care or competence when communicating this information while advising Plaintiffs about the Mastermind event." ROA 24-10186.261. Appellants do not plead any facts showing that Peykoff justifiably relied on Cawley's representations in any way. Under the *Iqbal* standard, these facts "stop [] short of the line between possibility and plausibility." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

In a desperate bid to escape dismissal, Appellants rely on *Gen. Elec. Cap. Corp. v. Posey*, 415 F.3d 391, 397 (5th Cir. 2005).  In that case, this Court reviewed the district court's dismissal of a Plaintiff's claims on a finding that its complaint contradicted its allegations. *Id.* at 395. Only on appeal did the defendants argue that the Plaintiff failed to allege sufficient facts for any of the required elements of negligent misrepresentation. *Id.* First, while the court's discussion of pleading

standards in *Possey* is noteworthy, it does not hold a binding effect in this case. Second, as shown above. Appellants' complaint failed to show how Cawley's representations regarding her expertise were false or how Appellants' reliance was either justified or detrimental.

## PRAYER

For the foregoing reasons, Appellees Charrissa Cawley and Game Changer Publishing respectfully request that the Court sustain the district court's order granting the 12(b)(6) motion to dismiss against Appellants Alex Peykoff and Satisfied Life Foundation, Inc. Appellees also request such other and further relief to which the Court may find them entitled, whether in law or in equity.

Respectfully submitted,

*/s/ Warren V. Norred*
Warren V. Norred, Texas Bar No. 24045094, wnorred@norredlaw.com
Norred Law, PLLC; 515 E. Border St., Arlington, TX, 76010
Attorney for Appellees

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that the foregoing brief complies with Federal Rule of Appellate Procedure 32(a)(7)(B) and (C) because it contains 5035 words. The brief also complies with the typeface and style requirements of Federal Rules of Appellate Procedure 32(a)(5) & 32(a)(6) because it has been prepared in a proportionally spaced, roman style typeface of 14 points or more.

/s/ *Warren V. Norred*
Warren V. Norred

## CERTIFICATE OF SERVICE

I hereby certify that on June 24, 2024, I served the foregoing Appellees' Brief using the court's e-file system.

/s/ *Warren V. Norred*
Warren V. Norred